**GINETTE ORNIS,**

   **Plaintiff,**

**v.**     Case No: 6:18-cv-1523-Orl-LRH

**COMMISSIONER OF SOCIAL SECURITY,**

   **Defendant.**

## MEMORANDUM OF DECISION

Ginette Ornis ("Claimant") appeals the Commissioner of Social Security's final decision denying her application for disability benefits. (Doc. 1). The Claimant raises several arguments challenging the Commissioner's final decision and, based on those arguments, requests that the matter be reversed and remanded for further proceedings. (Doc. 17 at 6-10, 15-19, 22-23). The Commissioner argues that the Administrative Law Judge ("ALJ") committed no legal error and that her decision is supported by substantial evidence and should be affirmed. (*Id*. at 10-15, 19-23). Upon review of the record, the Court finds that the Commissioner's final decision is due to be **AFFIRMED**.

### I. Procedural History

This case stems from the Claimant's application for disability insurance benefits. (R. 303-04). The Claimant alleged a disability onset date of June 16, 2015. (R. 303). The Claimant's application was denied on initial review and on reconsideration. The matter then proceeded before an ALJ, who, after holding a hearing (R. 184-206), entered a decision on October 19, 2017 denying the Claimant's application for disability benefits. (R. 11-24). The Claimant requested review of

the ALJ's decision, but the Appeals Council denied her request for review. (R. 1-4). This appeal followed.

## II. The ALJ's Decision

The ALJ found that the Claimant suffered from the following severe impairments: obesity; degenerative joint disease ("DJD") of the lumbar spine; sciatica; DJD of the left knee, positive rheumatoid factor; and asthma. (R. 14). The ALJ also found that the Claimant suffered from the following non-severe impairments: DJD of the cervical spine; right medial epicondylitis; hand cramps; fibromyalgia; hyperlipidemia; allergic rhinitis due to pollen; upper respiratory infection (resolved); and depressive disorder. (R. 14-15). The ALJ, however, determined that the Claimant did not have an impairment or combination of impairments that met or medically equaled any listed impairment. (R. 15).

The ALJ next found that the Claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a)[1] with the following additional limitations:

> [T]he claimant can occasionally climb ramps and stairs, but never ladders and scaffolds, and occasionally stoop, kneel, crouch, and crawl. The claimant can never work at unprotected heights and can never operate a motor vehicle.

(*Id.*). In light of this RFC, the ALJ found that the Claimant is unable to perform her past relevant work. (R. 22). However, the ALJ did find that the Claimant could perform other work in the national economy, including document preparer, food and beverage order clerk, and final assembler. (*Id.* at 23). In light of these findings, the ALJ concluded that the Claimant was not disabled between

---

[1] Sedentary work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

her alleged onset date (June 16, 2015) and the date of the ALJ's decision (October 19, 2017). (*Id.* at 24).

## III. Standard of Review

The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm it if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV. Analysis

The Claimant raises two assignments of error: 1) the ALJ erred by not following the opinions of the treating and examining physicians; and 2) the ALJ erred by finding the Claimant's testimony concerning her limitations not entirely credible. (Doc. 17 at 6-10, 15-19). The Court will address each assignment of error in turn.

**A. Medical Opinions**

The Claimant challenge's the ALJ's consideration (or lack thereof) of medical and opinion evidence from her treating neurosurgeon, Dr. Tsz Yeung Lau, and a one-time examining neurosurgeon, Dr. Jorge J. Inga. Specifically, the Claimant contends that the ALJ erred by not weighing Dr. Lau's "findings" – though it is unclear to which "findings" the Claimant is referring. (Doc. 17 at 7-8). The Claimant also contends that the ALJ erred by assigning Dr. Inga's opinion little weight. (*Id*. at 7-10).

In response, the Commissioner contends that Dr. Lau's "findings" – which he interprets as being contained in a treatment note from Dr. Lau dated May 18, 2017 – were not opinions that needed to be weighed. (*Id*. at 15). As for Dr. Inga, the Commissioner argues that the ALJ's reasons for assigning Dr. Inga's opinion little weight both support that decision and are supported by substantial evidence. (*Id*. at 11-15).

The ALJ is tasked with assessing a claimant's RFC and ability to perform past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis*, 125 F.3d at 1440. In determining a claimant's RFC, the ALJ must consider all relevant evidence, including the medical opinions of treating, examining and non-examining medical sources, as well as the opinions of other sources. *See* 20 C.F.R. § 404.1545(a)(3); *see also Rosario v. Comm'r of Soc. Sec.*, 490 F. App'x 192, 194 (11th Cir. 2012).

The ALJ must consider a number of factors in determining how much weight to give each medical opinion, including: 1) whether the physician has examined the claimant; 2) the length, nature, and extent of the physician's relationship with the claimant; 3) the medical evidence and

explanation supporting the physician's opinion; 4) how consistent the physician's opinion is with the record as a whole; and 5) the physician's specialization. 20 C.F.R. § 404.1527(c).

A treating physician's opinion must be given controlling weight, unless good cause is shown to the contrary. 20 C.F.R. § 404.1527(c)(2) (giving controlling weight to the treating physician's opinion unless it is inconsistent with other substantial evidence); *see also Winschel*, 631 F.3d at 1179. The opinion of an examining physician, on the other hand, is generally not entitled to any special deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (citing *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986)). Regardless of whether the opinion is from a treating, examining, or non-examining source, the ALJ must state the weight assigned to each medical opinion, and articulate the reasons supporting the weight assigned. *Winschel*, 631 F.3d at 1179. The failure to state the weight with particularity or articulate the reasons in support of the assigned weight prohibits the Court from determining whether the ALJ's ultimate decision is rational and supported by substantial evidence. *Id*.

### 1. Dr. Lau

The Claimant treated with Dr. Lau on May 18, 2017. (R. 520-21). On that date, Dr. Lau completed a physical examination of the Claimant that was practically unremarkable, with the only exception being "[m]otor 5/5 except L DF/EHL 4/5." (R. 521). Based on his physical examination and review of an MRI of the Claimant's lumbar spine, Dr. Lau assessed the Claimant with disc herniation at L5/S1 with radiculopathy and stated that "[g]iven the intensity of pain and she failed conservative management, I recommend surgical intervention." (*Id.*). Dr. Lau, though, did not offer any opinions as to whether the Claimant's disc herniation and resultant radiculopathy caused any specific functional limitations. (*See* R. 520-21).

The ALJ discussed Dr. Lau's treatment note in her decision (R. 19-20), but she did not weigh the treatment note (or any portion thereof).

The Claimant contends that the ALJ erred by not weighing the "findings" contained in Dr. Lau's May 18, 2017 treatment note. (Doc. 17 at 8).[2] This argument is unpersuasive for two reasons. First, the Claimant fails to identify the "findings" to which she refers. (*See id.*). The Court therefore cannot determine the merit of the Claimant's argument.

Second, assuming the Claimant's use of "findings" refers to Dr. Lau's assessment of disc herniation at L5/S1 with radiculopathy and his surgical recommendation, the Claimant has still not demonstrated that the ALJ erred. A medical opinion is a statement from a physician and other acceptable medical sources that reflects a judgment about the nature and severity of the claimant's impairment. 20 C.F.R. § 404.1527(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions"); *see Lara v. Comm'r of Soc. Sec.*, 705 F. App'x 804, 811 (11th Cir. 2017) ("A medical provider's treatment notes may constitute medical opinions if the content reflects judgment about the nature and severity of the claimant's impairments.") (citation omitted). A finding that the Claimant suffers from a disc herniation with radiculopathy and a surgical recommendation describes the impairment and how it may be remedied, but it does not describe the nature and severity of the impairment or the limitation(s) it may cause. That evidence therefore

---

[2] The Claimant does not expressly cite to Dr. Lau's May 18, 2017 treatment note in support of this argument. The Court, nevertheless, interprets the Claimant's argument to pertain to Dr. Lau's May 18, 2017 treatment note because that was the only treatment note the Claimant discussed in her brief. (Doc. 17 at 7-8 (citing R. 520-21)). Indeed, the Claimant discussed that treatment note in the paragraph immediately preceding the paragraph in which she contends that the ALJ erred by not weighing Dr. Lau's "findings." (*Id.*).

does not constitute a medical opinion that needed to be weighed.[3] Further, there is nothing else in Dr. Lau's treatment note that constitutes a medical opinion that needed to be weighed. The Court therefore finds the ALJ did not err by failing to weigh Dr. Lau's May 18, 2017 treatment note.

### 2. Dr. Inga

Dr. Inga performed a one-time medical evaluation of the Claimant on November 10, 2016. (R. 476-86). The evaluation consisted of a review of the Claimant's medical history, a physical examination, and a review of several MRI films. (*Id.*). During the examination, Dr. Inga found the Claimant walked with an antalgic gait, had reduced deep tendon reflexes, had hypalgesia in her left foot, had tender paraspinal muscles in her lumbar spine, and had some reduced range of motion in the lumbar spine. (R. 481-83). Based on his physical examination and review of MRI films, Dr. Inga opined that the Claimant "is temporarily disabled at this particular point." (*Id.* at 485-86). Dr. Inga, however, did not identify any specific functional limitations in his report. (*See id.*).[4]

The ALJ discussed Dr. Inga's report and assigned his opinion little weight, explaining:

Dr. Inga is not a treating physician and he appears to have examined the claimant only once, at the request of the claimant's [workers compensation] attorney, Mr. Bradley G. Smith. In addition, Dr. Inga's opinion is not consistent with the medical evidence of record. For example, no treating or other examining physician has opined that the claimant was disabled or otherwise precluded from all work activity.

---

[3] Even if such evidence constituted a medical opinion, the failure to weigh the same amounts to nothing more than harmless error because nothing about that evidence contradicts the ALJ's RFC determination limiting the Claimant to sedentary work. *See, e.g.*, *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (failure to weigh a medical opinion is harmless error if the opinion does not directly contradict the ALJ's RFC determination).

[4] Dr. Inga authored an addendum to his original report after reviewing an MRI film that he did not have access to during his initial evaluation. (R. 471-74). The addendum neither alters Dr. Inga's original opinion nor does it include any new opinions concerning the Claimant's functional limitations. (*See id.*). Further, the Claimant does not argue that the ALJ committed any error with respect to the addendum. (*See* Doc. 17 at 6-10). It is therefore unnecessary to address Dr. Inga's addendum any further.

(R. 21). Accordingly, the ALJ assigned little weight to Dr. Inga's opinion because he was a one-time examiner and his opinion was not consistent with the medical evidence of record. (*Id.*).[5]

The Claimant challenges each of the ALJ's reasons for assigning Dr. Inga's opinion little weight, arguing that the ALJ's reasons are conclusory and that Dr. Inga's opinion is supported by his own observations and Dr. Lau's May 18, 2017 treatment note. (Doc. 17 at 7-10). The Claimant's argument is unpersuasive. The ALJ provided sufficient reasons, which are supported by substantial evidence, to assign Dr. Inga's opinion little weight. First, the ALJ correctly recognized that Dr. Inga is an examining physician. As such, Dr. Inga's opinion is not entitled to any special deference. *McSwain*, 814 F.2d at 619. Second, while the ALJ's statement that Dr. Inga's opinion is inconsistent with the medical evidence of record is conclusory, the ALJ proceeded to offer an example in support of that finding. Specifically, the ALJ noted that no other physician has opined that the Claimant was precluded from all work activity or otherwise disabled. (R. 21). Indeed, the record contains no such opinions from any other medical sources aside from Dr. Inga. The ALJ's second reason is therefore supported by substantial evidence. Taken together, the Court finds that the ALJ provided sufficient reasons, which are supported by substantial evidence, to assign Dr. Inga's opinion little weight. Further, the mere fact that there is other evidence that tends to support Dr. Inga's opinion does not alter the Court's conclusion, because even if the evidence preponderates against the ALJ's decision, the Court must affirm the ALJ's decision if it is supported by substantial evidence, *Bloodsworth*, 703 F.2d at 1239, which it is.

---

[5] The Claimant also contends that the ALJ gave little weight to Dr. Inga's opinion because the Claimant was referred to Dr. Inga by her workers' compensation attorney. (Doc. 17 at 7). The Court does not see that as a reason on which the ALJ relied to assign Dr. Inga's opinion little weight. Even if it was, the Claimant does not argue that it was error for the ALJ to rely on that reason. The Claimant has therefore waived that argument. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (refusing to consider an argument that the claimant failed to raise before the district court).

Moreover, even if the ALJ's reasons did not support her decision to assign Dr. Inga's opinion little weight, the error would, at most, be harmless. Dr. Inga's opinion – that the Claimant was "temporarily disabled" – addresses the ultimate issue before the Commissioner, *i.e.*, whether the Claimant is disabled, and, as a such, "is not considered a medical opinion and is not given any special significance, even if offered by a treating source[.]" *Kelly v. Comm'r of Soc. Sec.*, 401 F. App'x 403, 407 (11th Cir. 2010); *see Williams v. Acting Comm'r of Soc. Sec.*, 649 F. App'x 1000, 1002 (11th Cir. 2016) (holding that a treating physician's opinion that a claimant was "fully disabled" was not a medical opinion, but rather a conclusory legal judgment on issues reserved to the Commissioner); SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996) ("[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance."). To the extent the ALJ erred by assigning Dr. Inga's opinion little weight, the error is, at most, harmless given the nature of Dr. Inga's opinion and the fact that it is not entitled to any special significance. *See Tillman v. Comm'r, Soc. Sec. Admin.*, 559 F. App'x 975, 975-76 (11th Cir. 2014) (finding failure to expressly assign weight to medical opinions concerning matters ultimately reserved for the Commissioner to be harmless error); *see also Gregg v. Comm'r of Soc. Sec.*, 6:18-cv-1498-Orl-GJK, 2019 WL 5884668, at *2 (M.D. Fla. Nov. 12, 2019) (similar).

In light of the foregoing, the Court finds the Claimant's first assignment of error unavailing.

### B. Credibility

The Claimant generally contends that the ALJ "provided insufficient reasons" to discredit her testimony and that some of those reasons are not supported by substantial evidence. (Doc. 17 at 16-19). In response, the Commissioner argues that the ALJ provided specific reasons in support of her credibility determination and each reason is supported by substantial evidence. (*Id*. at 20-22).

A claimant may establish "disability through his own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). A claimant seeking to establish disability through his or her own testimony must show:

> (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). If the ALJ determines that the claimant has a medically determinable impairment that could reasonably produce the claimant's alleged pain or other symptoms, the ALJ must then evaluate the extent to which the intensity and persistence of those symptoms limit the claimant's ability to work. 20 C.F.R. § 404.1529(c)(1). In doing so, the ALJ considers a variety of evidence, including the claimant's history, the medical records and laboratory findings, the claimant's statements, medical source opinions, and other evidence of how the pain affects the claimant's daily activities and ability to work. *Id.* at § 404.1529(c)(1)-(3). "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561-62. The Court will not disturb a clearly articulated credibility finding that is supported by substantial evidence. *Id.* at 1562.

The ALJ summarized the Claimant's testimony and found her "medically determinable impairments could reasonably be expected to produce the . . . alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (R. 16). In support, the ALJ pointed to following: 1) the medical evidence of record and conservative treatment, which the ALJ found to be inconsistent with the Claimant's testimony (R. 19-20); 2) the absence of frequent hospitalizations or emergency room visits due the Claimant's asthma (R. 20); 3) many of the Claimant's impairments were non-severe, *i.e.*, they did not significantly limit her

physical or mental ability to do basic work activities (20 C.F.R. § 404.1522(a)) (R. 20); 4) the Claimant collected unemployment benefits for a period of time after her alleged onset date (R. 20 (citing R. 310)); 5) the Claimant had a wide range of daily activities (R. 20-21); 6) the Claimant was not prescribed the cane she used to ambulate and did not have the cane with her at the hearing (R. 21); and 7) the Claimant is not receiving ongoing mental health treatment (R. 21).

The Claimant only challenges two of the seven reasons supporting the ALJ's credibility determination: 1) the Claimant's impairments have been managed with conservative treatment; and 2) the Claimant's testimony is inconsistent with her activities of daily living. (Doc. 17 at 17).[6] Each argument is unpersuasive.

First, the Claimant contends that the record belies the ALJ's determination that the Claimant's impairments have been managed with conservative treatment. (*Id*.). In support, the Claimant points solely to Dr. Lau's May 18, 2017 treatment note, in which he recommended surgical intervention (specifically, a L5/S1 microdiscectomy) given the intensity of the Claimant's pain and failure of conservative treatment. (*Id*. (citing R. 520-21)). While Dr. Lau's treatment note does conflict with the ALJ's finding, the record nevertheless contains other substantial evidence to support the ALJ's decision. For example, the ALJ discussed treatment records from several treating physicians, including the Claimant's primary care physician and a treating orthopaedic

---

[6] The Claimant also argues that the "ALJ did not sufficiently discuss or weigh the medical findings of Dr Lau and the MRI studies performed on March 19, 2015 and February 2, 2017." (Doc. 17 at 17). This argument does not challenge any of the reasons supporting the ALJ's credibility determination. Indeed, it is unclear how this argument relates to the ALJ's credibility determination. Notwithstanding this fact, the ALJ expressly discussed Dr. Lau's May 18, 2017 treatment note and the MRI films identified by the Claimant. (R. 17-20). Also, as discussed in the first assignment of error, there was nothing in Dr. Lau's treatment note that constitutes a medical opinion that needed to be weighed. Accordingly, the Court finds the Claimant's argument unavailing.

- 11 -

surgeon, who prescribed physical therapy, pain medications, and epidural injections. (R. 19-20).[7] Also, the ALJ addressed Dr. Lau's surgical recommendation, noting that there is no evidence the Claimant underwent lumbar spine surgery (R. 20) – a finding the Claimant does not refute.[8] The record therefore contains substantial evidence to support the ALJ's finding that the Claimant's impairments were managed with conservative treatment, and, as a result, the Court may not disturb the ALJ's finding even if the evidence preponderates against it. *Bloodsworth*, 703 F.2d at 1239.[9]

Second, the Claimant contends that her activities of daily living do not undermine her testimony concerning the limiting effects of her impairments. (Doc. 17 at 17). Specifically, the Claimant points to her testimony that she spends much of the day laying down, watching television, and reading the Bible. (*Id.*). Also, the Claimant points to her testimony that she does not drive frequently, needs help with household chores, only cooks simple meals, and does not grocery shop. (*Id.*). The ALJ considered the activities highlighted by the Claimant, as well as one more activity

---

[7] The Claimant does not challenge the ALJ's characterization of these treatments as conservative. (*See* Doc. 17 at 15-19).

[8] At the June 2017 hearing before the ALJ, the Claimant, in response to her representative's questioning, testified that she was scheduled for surgery on "one of [her] nerve[s]" the following month. (R. 195). The Claimant did not identify who was performing the surgery. (R. 195-96). This appears to be the only evidence before the ALJ that the Claimant was scheduled to have surgery, but it was unclear from her testimony whether she was referring to the surgery that Dr. Lau had recommended. (*See id.*). The Court therefore does not find that the Claimant's testimony, in and of itself, undermines the ALJ's statement that the Claimant did not have the surgery recommended by Dr. Lau.

[9] The Court notes that following the ALJ's decision, the Claimant submitted additional medical records to the Appeals Council in support of her request for review. (R. 36-183). Among these records was evidence that Dr. Lau performed surgery on the Claimant's lumbar spine on July 26, 2017. (R. 151-52). This evidence, however, was not before the ALJ when she entered her decision. (*See* R. 376-529). The Court therefore cannot consider such evidence in determining whether the ALJ's decision was supported by substantial evidence. *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998) ("[A court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence.").

that the Claimant did not mention in her brief – that she raises three children, ages nine, twelve, and eighteen. (R. 20). While the activities the Claimant highlights are limited in duration and scope, the same cannot be said of her raising three children. The ALJ also took into account the fact that the Claimant collected unemployment benefits for at least a portion of the relevant time period. (R. 20). As the ALJ noted, the Claimant had to hold herself out as ready, willing, and able to work in order to collect such benefits – and this clearly is not consistent with the Claimant's testimony about the severity of her impairments. *See Robinson v. Comm'r of Soc. Sec.*, 649 F. App'x 799, 802 (11th Cir. 2016) (finding the ALJ's reliance on the claimant's receipt of unemployment benefits, among other reasons, supported the ALJ's credibility determination); *see also Strother v. Comm'r of Soc. Sec.*, 8:16-cv-486-T-DNF, 2017 WL 2791509, at *3 (M.D. Fla. June 28, 2017) ("While the receipt of unemployment benefits, standing alone, does not automatically disqualify a claimant from consideration of Social Security benefits, an ALJ may consider a claimant's receipt of unemployment benefits in making a credibility determination.") (citing *Boyd v. Astrue*, No. 3:10-cv-105-J-JRK, 2011 WL 1259795, at *6 (M.D. Fla. Mar. 31, 2011)). When considering all the activities discussed by the ALJ together, the Court does not find the ALJ erred by relying on the Claimant's activities of daily living in reaching her credibility determination.

In summary, the ALJ stated multiple reasons in support of her credibility determination. The Claimant only challenged two of those reasons, thereby waiving any challenge to all other reasons articulated by the ALJ. *See Crawford*, 363 F.3d at 1161. And, as discussed above, the two reasons the Claimant did challenge are supported by substantial evidence. When considering those reasons together with the other reasons the ALJ articulated in support of her credibility determination (and which the Claimant did not challenge), the Court finds the ALJ's credibility determination is supported by substantial evidence. *See Foote*, 67 F.3d at 1561-62 (reviewing court

will not disturb credibility finding with sufficient evidentiary support).

**V.     Conclusion**

Accordingly, it is **ORDERED** that:

1. The Commissioner's final decision is **AFFIRMED**.

2. The Clerk is **DIRECTED** to enter judgment in favor of the Commissioner and against the Claimant and **CLOSE** the case.

**DONE** and **ORDERED** in Orlando, Florida on February 5, 2020.

*[Signature: Leslie R. Hoffman]*

LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

The Honorable Angela L. Neel
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Fountain Square II
4925 Independence Pkwy., Ste. 200
Tampa, FL 33634-7551